**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 20-14211-CIV-ROSENBERG/MAYNARD**

**SHERRY EDMONDSON,**

     **Plaintiff,**

**v.**

**ANDREW M. SAUL, Commissioner,**
**Social Security Administration,**

     **Defendant.**

_____/

**REPORT AND RECOMMENDATION ON PLAINTIFF'S MOTION FOR SUMMARY**
**JUDGMENT (DE 21)**

THIS CAUSE comes before the Court upon the above referred motion (DE 2). Having reviewed the Motion, Response, administrative record, and having held a hearing on June 3, 2021, the undersigned recommends Plaintiff's Motion be DENIED for reasons set forth below.

**BACKGROUND**

This case involved a determination of Plaintiff Sherry Edmondson's ("Plaintiff") application for disability insurance benefits under the Social Security Act. Plaintiff applied for disability insurance benefits on August 23, 2017 due to depression, anxiety, bulging disc sciatic in her back, a tilted pelvis, hypertension, hepatitis, a colon tumor, COPD, and migraines beginning on January 2, 2010. R.[1] 2381, 2384.  Plaintiff's application was denied initially and upon reconsideration. R. 2379, 2390.  Plaintiff thereafter requested a hearing before an Administrative Law Judge ("ALJ"), and a hearing was held on March 27, 2019.  R. 2361.  Plaintiff appeared without a representative and agreed to proceed with the hearing without representation. R. 2363.

---

[1] References to "R. –" are to pages of the transcript of the administrative record.

On May 24, 2019, the ALJ issued an unfavorable decision finding that Plaintiff was not under a disability as defined by the Social Security Act. R. 18-21. The Act defines disability as the inability to engage in any substantial gainful activity due to medically determinable physical or mental impairments that can be expected to last for a continuous period of at least twelve months. 42 U.S.C. § 423(d)(1)(A). In addition, a claimant for Social Security disability insurance benefits must also meet the insured status requirements of sections 216(i) and 223 of the Social Security Act. 42 U.S.C. § 416(i); 42 U.S.C. § 423. A claimant must establish disability on or before the date last insured. *Id*. The ALJ found that Plaintiff had no medically determinable impairment present prior to December 31, 2010, which was the date Plaintiff was last insured. R. 19. The ALJ reported that there were no records prior to that date from any examining or treating provider, and although Plaintiff testified that she received treatment from Dr. Prixit Sharma before December 31, 2010, the earliest records before the ALJ from Dr. Sharma were from 2014. *Id*. The state medical and mental health experts who reviewed Plaintiff's application also found insufficient evidence to support Plaintiff's disability claims. R. 19, 2379, 2389. As such, there were no medical findings to substantiate the existence of a medically determinable impairment through the date last insured and Plaintiff did not establish a disability during the relevant time period. R. 19.

Plaintiff requested administrative review of the ALJ's decision and submitted over 2,000 pages of additional evidence in support of her request. R. 1-2. The Appeals Council denied Plaintiff's request for review, consequently rendering the ALJ's decision "final." 42 U.S.C. § 405(g); *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). Plaintiff now seeks judicial review. DE 21. Plaintiff has exhausted her administrative remedies and, as such, this case is ripe for review under 42 U.S.C. § 1383(c).

**DISCUSSION**

Plaintiff raises two issues on appeal.  DE 21.  First, Plaintiff argues that the Appeals Council erred in refusing to consider the new and material evidence Plaintiff submitted.  Second, Plaintiff argues that she was denied a full and fair hearing because the ALJ did not properly inform her of right to representation and failed in his duty to fully develop the record. The undersigned will address each argument in turn.

### I.   The Appeals Council Properly Assessed Plaintiff's Newly Submitted Evidence

After the ALJ's decision, the Plaintiff submitted approximately 2,334 pages of new evidence to the Appeals Council. *See* R. 2. The Appeals Council described these additional records as follows:

> Medical records from Highlands Regional Medical Center Radiology dated April 20, 2010 through October 13, 2010 (7 pages).
> …
>
> Medical records Winn Dixie pharmacy dated February 1, 2011 to August 21, 2019 (29 pages), medical records from Prixit Sharma, M.D., dated August 10, 2011 through November 1, 2018 (89 pages), medical records from Highlands Regional Medical Center dated October 1, 2013 through August 7, 2019 (2,040 pages), Walgreens pharmacy dated October 31, 2013 through August 25, 2016 (10 pages), medical records from Total Gastroenterology dated April 29, 2014 through November 19, 2015 (31 pages), medical records from Deepak Patel, M.D. dated October 3, 2014 through October 31, 2014 (5 pages), medical records from Sebring Pain Management dated September 28, 2015 through December 1, 2015 (21 pages), medical records from Eric Palosky, D.O., dated October 15, 2015 through December 4, 2017 (89 pages), and medical records from Amy de la Fuente, ARNP, dated August 2, 2019 through September 6, 2019 (13 pages).

R. 2.  The Appeals Council declined to review because the records dated prior to Plaintiff's date last insured did not "show a reasonable probability that it would change the outcome of the decision" and the remaining records did not "relate to the period at issue."  *Id.*

Generally, a claimant for Social Security benefits may present new evidence at each stage of the administrative process, including presenting new evidence to the Appeals Council.  20 C.F.R. § 404.900(b); *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1261 (11th Cir. 2007). While the Appeals Council has the discretion to decline review of the ALJ's denial of benefits, the Appeals Council "must consider new, material, and chronologically relevant evidence that the claimant submits." *Washington v. Soc. Sec. Admin., Com'r*, 806 F.3d 1317, 1320 (11th Cir. 2015) (internal quotations omitted). "New evidence is chronologically relevant if it relates to the period on or before the date of the [ALJ's] hearing decision." *Hargress v. Soc. Sec. Admin., Comm'r*, 883 F.3d 1302, 1309 (11th Cir. 2018) (internal quotations omitted).  Evidence is "material" when it is "relevant and probative so that there is a reasonable possibility that it would change the administrative result[.]" *Milano v. Bowen*, 809 F.2d 763, 766 (11th Cir. 1987) (internal quotations omitted). "The [Appeals Council] may deny review if, even in the light of the new evidence, it finds no error in the opinion of the ALJ." *Pritchett v. Comm'r, Soc. Sec. Admin.*, 315 F. App'x 806, 814 (11th Cir. 2009).  When a claimant properly submits new evidence to the Appeals Council, the reviewing court must consider whether the new evidence makes the ALJ's decision to deny benefits erroneous. *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1262 (11th Cir. 2007). There is no requirement that the Appeals Council "provide a detailed discussion of a claimant's new evidence when denying a request for review." *Mitchell v. Comm'r, Soc. Sec. Admin.*, 771 F.3d 780, 784 (11th Cir. 2014).

The Appeals Council rejected the additional records submitted by Plaintiff for two reasons. First, the bulk of the new documents did not relate to the period at issue. Of the 2,334 pages of records submitted, only seven pages of records were dated before Plaintiff's date last insured. The Appeals Council explained, "[t]he Administrative Law Judge decided your case through December

31, 2010" therefore, records after that date "do not affect the decision about whether you were disabled beginning on or before December 31, 2010." R. 2. Further, the Appeals Council found that the seven pages of record dated before December 31, 2010 were not material. The Appeals Council found no reasonable probability that those seven pages would change the outcome of the ALJ's decision. *Id*.

The Appeals Council did not err in finding the medical records which post-dated the date last insured were not chronologically relevant. To qualify for disability insurance benefits, Plaintiff must show that she was disabled between her alleged onset date of January 2, 2010 and her last insured date of December 31, 2010. *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) ("For [disability insurance benefit] claims, a claimant is eligible for benefits where she demonstrates disability on or before the last date for which she were insured."). The records dated after December 2010 included treatment notes, pathology and radiology reports, prescription records, and lab results showing Plaintiff received treatment for various physical and mental ailments from 2011 to 2019. Plaintiff argues that records showing order refills of Butalbital, Meloxicam, Famotidine, and Fluoxetine in February 2011—less than two months after her date last insured—demonstrate that she had mental and physical impairments before her date last insured. R. 2189. Plaintiff also points to an August 2011 treatment note from Dr. Sharma with the abbreviation "GAD/CTTH" written on the bottom of the page. R. 2339. GAD/CTTH is an abbreviation for generalized anxiety disorder and chronic tension headaches. Plaintiff argues that Dr. Sharma likely prescribed the medications listed on the February 2011 prescription records to treat those conditions. The implication is that Plaintiff would likely have been diagnosed with these conditions prior to the date last insured.

Plaintiff's argument in this regard is unavailing. The fact that Plaintiff ordered refills in February 2011 does not show what her diagnoses or impairments were prior to December 2010. One would have to speculate on why she was prescribed these medications and when her symptoms started to find these records chronologically relevant. In addition, a treatment note from August 2011 which merely states "GAD/CTTH" at the bottom of the page also is insufficient to determine Plaintiff's impairments prior to her date last insured. Even if, as Plaintiff contends, these records are demonstrative of Plaintiff's health conditions two to eight months before the records are dated, there is no reasonable probability that Plaintiff's February 2011 refills or an abbreviation at the bottom of an August 2011 treatment note would have changed the ALJ's decision. The information Plaintiff points to does not discuss or refer to her condition or symptoms before her date last insured, or discuss findings related to earlier records or treatment. A list of prescriptions and an abbreviation on a doctor's note would not have been enough to establish severe impairments.

The Appeals Council also did not err in finding that the seven pages that pre-dated Plaintiff's date last insured were not material. Those seven pages consisted of records from Highlands Regional Medical Center dated April 20, 2010, August 25, 2010, and October 13, 2010 and include the result of diagnostic imaging (CT scans and MRIs). R. 2343-49. On April 20, 2010, Plaintiff left foot and ankle were x-rayed due to a moderate to severe ankle injury. R. 2348-49. The scan of Plaintiff's ankle showed that Plaintiff had soft tissue swelling around her ankle, but no acute fractures. R. 2349. The scan of Plaintiff's foot revealed mild degenerative changes at the first metatarsal phalangeal joint, a tiny plantar calcaneal spur, but no acute fractures. R. 2348. On August 25, 2010, Plaintiff underwent a CT scan of her head. R. 2346-47. The impression from the CT scan stated that Plaintiff had a punctate calcification on the right side of her brain stem, but

the cause and significance was uncertain.  R. 2346.  It further stated that the benign nature of the punctate could be confirmed by an MRI of the brain if clinically warranted.  *Id*.  The examiner noted that there was no acute intracranial hemorrhage, mass effect, or midline shift. *Id*.  Plaintiff then had an MRI taken of her brain and cervical spine on October 13, 2010.  R. 2343-45.  The MRI of Plaintiff's brain showed indeterminate calcification of the brain stem, but the conclusion was "normal plain and contrast enhanced MRI of the brain" and no brain stem lesions.  R. 2345. The MRI of Plaintiff's cervical spine indicated mild degenerative endplate spondylosis at C5-C6 associated with chronic disc degeneration, but the rest of the intervertebral discs were normal.  R. 2343-44.  The examiner concluded that the "C4-5 central disc/osteophyte complex contacting the ventral cord with slight encroachment into the right C4-C5 neural foramen." R. 2343-44. The examiner also concluded that there were no intramedullary lesions, no cervical misalignments, and no evidence of bone marrow abnormalities.

 Plaintiff argues that these seven pages from Highlands Regional Medical Center are material because they demonstrate the existence of medically determinable impairments prior to her date last insured.  Plaintiff also notes that one of the CT scans indicates that she had a history of headaches and migraines, which, Plaintiff argues, shows these issues existed before her date last insured.

Plaintiff's arguments here are unconvincing. For disability, a claimant must establish that he or she has a medically determinable impairment that results from an anatomical, physiological, or psychological abnormality. 20 C.F.R. § 404.1521. The Commissioner must then determine whether the medically determinable impairment is severe. *Id*. An impairment is severe if it significantly limits the claimant's physical or mental ability to perform basic work activities. 20 C.F.R. § 416.920(c). Here, Plaintiff has not provided evidence of the existence of a severe

impairment prior to her date last insured.  The x-rays of Plaintiff's left ankle and foot do not indicate an ongoing impairment for purposes of establishing a disability.  The images show some swelling in the ankle, a "tiny" plantar calcaneal spur, and "mild" degenerative changes of the first metatarsal phalangeal joint.  There were no definite acute fractures seen, however, and Plaintiff has not provided any evidence of a condition that would significantly limit Plaintiff's ability to work.  Similarly, although the MRI of Plaintiff's cervical spine showed a "slight" encroachment into the right C4-c5 neural foramen and "mild" degenerative endplate spondylosis associated with chronic disc degeneration, Plaintiff has not established that these mild or slight abnormalities were a medically determinable impairment. Finally, while the CT of Plaintiff's head showed a punctate calcification on her brain stem, the impression was that an MRI could confirm its benign nature. A month and a half later, an MRI of Plaintiff's brain was taken, and it revealed a normal brain stem and no brain lesions. R. 2345. In sum, these records do not establish a medically determinable impairment, much less one that meets the regulatory definition of severe.

Even assuming the records were sufficient to show medically determinable impairments, there is no evidence in the record from that time period suggesting that these impairments would prevent Plaintiff from engaging in substantial gainful activity. *See Moore v. Barnhart*, 405 F.3d 1208, 1213 n.6 (11th Cir. 2005) ("the mere existence of … impairments does not reveal the extent to which they limit [the plaintiff's] ability to work or undermine the ALJ's determination in that regard."); *McDaniel v. Bowen,* 800 F.2d 1026, 1031 (11th Cir. 1986) (quoting *Brady v. Heckler*, 724 F.2d 914, 920 (11th Cir. 1984) ("a claimant's impairment can be considered as not severe only if it is a slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work[.]"); *McCruter v. Bowen*, 791 F.2d 1544, 1547 (11th Cir. 1986) ("the 'severity of a medically ascertained disability must be measured in

terms of its effect upon ability to work, and not simply in terms of deviation from purely medical standards of bodily perfection or normality."); *Davis v. Barnhart*, 153 F. App'x 569, 572 (11th Cir. 2005) ("Disability is determined by the effect an impairment has on the claimant's ability to work, rather than the diagnosis of an impairment itself.").

The records at issue in this case are not of the same character as those cases in which the Appeals Council's failure to consider new evidence constituted reversible error. None of the records that pre-date the date last insured discuss findings related to Plaintiff's treatment, symptoms, or impairments and do not establish the existence of a severe medically determinable impairment during that time. As for the records that post-date the date last insured, they do not establish the existence of medically determinable impairments, severe or otherwise, during the relevant time period. For these reasons, the undersigned is unable to find that the Appeals Council erred in refusing to re-evaluate Plaintiff's claim based on her submission of new evidence.

## II. The Plaintiff Was Not Denied Her Right to a Full and Fair Hearing

Plaintiff argues that she did not receive a full and fair hearing because the ALJ failed to sufficiently explain her right to representation and failed to fully develop the record. Defendant contends that Plaintiff was aware of her right to representation and the Plaintiff has not shown any prejudice from the ALJ's development of the record.

A claimant has a right to be represented by counsel during a hearing before an ALJ. 42 U.S.C. § 406; *Brown v. Shalala*, 44 F.3d 931, 934 (11th Cir. 1995). The Commissioner "has a duty to notify a claimant of his or her right to counsel before the hearing." *Smith v. Schweiker*, 677 F.2d 826, 828 (11th Cir. 1982). This right may be waived, but the waiver must be knowing and voluntary to be valid. *See Brown*, 44 F.3d at 935 (waiver not valid where the hearing transcript

showed that the claimant was confused about the ALJ's questions regarding representation)*;* *Cregar v. Astrue*, 2009 WL 383388, at \*7 (M.D. Fla. Feb. 13, 2009) (same).

In this case, the record demonstrates that Plaintiff was aware of her right to counsel and knowingly and voluntarily waived that right. Plaintiff obtained counsel to represent her during the administrative proceeding prior to the hearing and it was her counsel that, on her behalf, asserted her right to have an in-person hearing.  R. 2424.  Months later, counsel wrote that they were withdrawing because Plaintiff ceased communication with them.  R. 2425-26.[2]  Plaintiff was further reminded of her right to counsel when she received a Notice of Hearing, which explained her right to representation. R. 2428-2436. The Notice included an explanation about the resources available to help Plaintiff find an attorney and that some representatives do not charge a claimant unless benefits are awarded.  R. 2435.  Plaintiff then signed a form acknowledging receipt of the Notice.  2451.

At the hearing, the ALJ engaged in the following colloquy with Plaintiff about her right to counsel at the beginning of her hearing:

> ALJ:  Ms. Edmonson, this is your first scheduled hearing.  Did you try to get a representative?
>
> CLMT: No.
>
> ALJ: Do you want to proceed without a representative?
>
> CLMT: Yes.
>
> ALJ:  Okay, so I'll explain everything to you and go over the record and take your testimony and Dr. Wright under oath or affirmation.  Would you all please raise your right hand.
>
> (The oath was administered.)

---

[2] Counsel also asked that the Social Security Administration instruct Plaintiff to contact them should it make contact with Plaintiff. The agency has no duty to serve as a liaison between counsel and the Plaintiff, however. The agency's duty is to ensure Plaintiff was aware of her right to representation, and it fulfilled that duty in this case.

R. 1436.

In this case, unlike in *Cregar* upon which Plaintiff relies, there is no indication from the transcript that Plaintiff was confused about her right to representation or anything else the ALJ said to her. *Cregar*, 2009 WL 383388, at *5-7. Also, unlike the plaintiff in *Cregar*, who acquired counsel only after the hearing, Plaintiff had actually retained a lawyer before the hearing and subsequently decided to appear unrepresented at the hearing. Plaintiff's claim that she did not knowingly waive her right to counsel is not supported by the record which shows that she was advised of her right to representation before the hearing by way of notice. *See e.g. Clark v. Soc. Sec. Admin., Comm'r*, 848 F. App'x 858, 863 (11th Cir. 2021) (finding that the plaintiff's claim that she did not knowingly waive her right to counsel was belied by the record which she showed she had received multiple notices informing her of right to representation); *Coven v. Comm'r of Soc. Sec.*, 384 F. App'x 949, 951 (11th Cir. 2010) (finding that the plaintiff's receipt of notices advising her of her right to free representation and her written waiver of the right were enough to show that she knowingly and voluntarily waived that right). Therefore, the undersigned recommends that the Plaintiff was properly advised of her right to obtain representation and validly waived that right in this case.

Even where a waiver is invalid, to show that she was denied a full and fair hearing, a plaintiff must also show prejudice. *See Kelley v. Heckler,* 761 F.2d 1538, 1540 (11th Cir. 1985) ("A showing of prejudice must be made before we will find that a hearing violated claimant's rights of due process and requires a remand to the Secretary for reconsideration."). A hearing before the ALJ is not an adversarial proceeding, and the ALJ has a basic duty to develop a full and fair record. *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997). This duty requires the ALJ to develop the claimant's complete medical history for at least the twelve months preceding the month the

claimant's application was filed and to make a reasonable effort to help a claimant get medical reports when permission is given. *Robinson v. Astrue*, 235 Fed.Appx. 725, 727 (11th Cir. 2007). Where the claimant appears at an administrative hearing unrepresented *and the right to counsel is not waived*, the ALJ's obligation to develop the record rises to the level of a special duty. *Coven v. Comm'r of Soc. Sec.*, 384 F. App'x 949, 951 (11th Cir. 2010); *Cowart v. Schweiker*, 662 F.2d 731, 733 (11th Cir. 1981). This special duty requires the ALJ "to ensure the record demonstrates that an unrepresented claimant *who did not waive counsel* was not prejudiced by the lack of counsel." *Robinson v. Astrue*, 235 F. App'x 725, 727 (11th Cir. 2007) (emphasis added).

Here, Plaintiff knowingly waived her right to representation, so the ALJ's duty was met in this case.  Moreover, Plaintiff has not shown unfair prejudice from her lack of representation at the administrative hearing. The hearing transcript demonstrates that the ALJ explored the facts relevant to Plaintiff's claim.  After obtaining her waiver of representation, the ALJ explained to Plaintiff that, although she had not worked in fifteen years, her date last insured was December 10, 2010, so she had to establish disability on or before that date in order to receive disability insurance benefits.  R. 2364-65. The ALJ further advised her that she could apply for SSI, which could be more favorable to her since SSI is not based on a date last insured, but which also involved income requirements.  The ALJ recommended that she check with Social Security about SSI, and Plaintiff said she would do so.

Plaintiff argues that she was prejudiced by the ALJ's failure to obtain additional records on her behalf. At the hearing, the ALJ explained the lack of evidence from the relevant time period saying:

> ALJ:  So what we have, Ms. Edmonson, it's called the insured status is the problem in your case. You allege disability January 2, 2010, about nine years ago but your insured status, it's called your insurance, because you have, that's what I was talking about your

work has been so long ago, ran out in December 10, 2010, that same year. So the evidence before 12/31/10, that whole year of 2010 is the only evidence I can consider and I have none. The second question I wanted to ask you is, I point that out about the date last insured but did you, do you have too much income to get SSI? Did you ever apply for SSI?

CLMT: No, I haven't applied for SSI.

…

ALJ: Just a friendly tip, to make sure no stone is left unturned. I want to make sure you're not allowed, right now I only have before me 2010, so back to the current claim, Ms. Edmondson, the earliest evidence I have is 2014 from your gastroenterologist and then I saw you, I got your, Dr. Polosky [PHONETIC] and then I gave the Social Security representative some new sources but you see the problem that's before us. We have to go back to 2010. Were you seeing anybody back then that you remember?

CLMT: I don't remember.

ALJ:  So the evidence is not existent for them and without any, without evidence and your insured status I don't have any impairment to relate…

R. 2364-67.

Upon further inquiry from the ALJ, Plaintiff testified that she might have seen Dr. Sharma in 2010. After the Plaintiff gave the ALJ information about Dr. Sharma and his past treatment, the following exchange took place:

ALJ:  I'll take a shot at getting it. Is your address correct? Have you moved?

CLMT: No, I haven't moved.

ALJ:  So what I'll do is try to get that evidence from Dr. Sharma if it helps your claim but it has to be evidence in that era '09 and '10 and '11 to be reasonable. It doesn't have to be exactly December 31, 2010 and I'll see if that can help me look at you claim….

R. 2368-69.

It does not appear from the record that the ALJ obtained any records from Dr. Sharma.[3] Plaintiff fails to show prejudice, however, because even if the ALJ had obtained the records from Dr. Sharma on her behalf, there is no reasonable probability that those records would have changed the administrative result. Plaintiff complains that the ALJ stated that he would obtain treatment notes from Dr. Sharma for the relevant time period and did not. Notably, however, in the documents Plaintiff submitted to the Appeals Council, the earliest treatment record from Dr. Sharma is from August 2011. If the ALJ would have obtained these records from Dr. Sharma himself, they still would not have been chronologically relevant for the reasons discussed above. This is not a case where there are missing documents that *might* have supported Plaintiff's claim of disability. *See e.g. Brown v. Shalala*, 44 F.3d 931, 936 (11th Cir. 1995) (finding remand necessary where the record revealed evidentiary gaps in the plaintiff's medical record and holding that in absence of proof to the contrary, it must be assumed that the missing evidence would have supported the plaintiff's claims of disability). Rather, this Court has reviewed the earlier records from Dr. Sharma and finds that they do not establish the existence of a severe medically determinable impairment on or before December 31, 2010. *See Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003) (explaining that it is ultimately it is the claimant's burden to prove he or she is disabled, and the claimant is therefore responsible for producing evidence to support his or her claim for disability). Because the records from Dr. Sharma would not have changed the outcome, Plaintiff has failed to show prejudice from any failure of the ALJ to fully develop the record in this case.

---

[3] The ALJ did secure records from Amy De La Fuente, ARNP, which reflected treatment for pain, depression, and anxiety during an office visit in December 2018.  R. 2583, R. 2941-2949. The records are chronically irrelevant, however.

**CONCLUSION**

**ACCORDINGLY**, this Court recommends to the District Court that the Plaintiff's Motion for Summary Judgment (DE 21) be **DENIED**.

The parties shall have fourteen (14) days from the date of this Report and Recommendation within which to file objections, if any, with the Honorable Robin L. Rosenberg, the United States District Judge assigned to this case. **If a party does not intend to object to this Report and Recommendation, that party shall file a notice of such within five (5) days of the date of this Report and Recommendation.**

**DONE AND SUBMITTED** in Chambers at Fort Pierce, Florida, this __28th__ day of July, 2021.

SHANIEK M. MAYNARD
UNITED STATES MAGISTRATE JUDGE